UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MAURICE TREAKLE,

    Plaintiff,

v.

DR. CLEMMONS, et al.,

    Defendants.

Civil No. 17-9340 (RBK) (JS)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

The plaintiff, Maurice Treakle, is detained at Atlantic County Justice Facility in Mays Landing, New Jersey. The plaintiff is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. Plaintiff submitted for filing his original complaint, a first amended complaint, and a motion for the appointment of pro bono counsel.

At this time, this Court must screen the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief can be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the following reasons, the amended complaint will be permitted to proceed in part. In addition, this Court will direct the Clerk to appoint pro bono counsel to represent Plaintiff in the instant matter.

## II. FACTUAL BACKGROUND

The allegations of the complaint will be construed as true for purposes of this screening opinion. Plaintiff seeks to bring a civil rights complaint pursuant to 42 U.S.C. § 1983 against the following defendants: (1) Dr. Clemmons, a doctor at the Atlantic County Justice Facility; (2)

Sheryl Dubose, Regional Director of CFG Health Systems; (3) CFG Health Systems; and (4) Geraldine Cohen, warden at the Atlantic County Justice Facility.

Plaintiff filed his original Complaint in October 2017. In that Complaint, Plaintiff stated that on September 27, 2017, he was "called down to medical" to receive follow up treatment on his "condition." (Dkt. No. 1, pg. 4). Plaintiff alleges that when he walked in to see the prison doctor, Dr. Clemmons, that she asked if Plaintiff was, "the one who has the blood disease?" (Dkt. No. 1, pg. 4). When Plaintiff indicated that yes, he was the individual with the blood disease and that he had a lump growing under his arm, Dr. Clemmons denied Plaintiff medical care and told him to leave her office. Plaintiff complained to the officer that was in the medical unit, and then to the prison's internal affairs, but no action was taken. In his original Complaint, Plaintiff requested that Dr. Clemmons be found liable for denying him medical attention and requested monetary compensation in the amount of 2.5 million dollars for pain and suffering.

In the spring of 2018, Plaintiff filed an amended Complaint. Plaintiff's amended Complaint stated the following;

> Defendant Dr. Clemmons was deliberately indifferent to plaintiff's serious medical needs (lymphomic cancer) when she denied plaintiff Treakle any treatment at all for his medical condition on September 27th, 2017. Dr. Clemmons was aware of the fact that plaintiff Treakle suffered from cancer as a result of the blood tests performed by defendant CFG Health Systems. As a result of Dr. Clemmons indifference to plaintiff's serious medical needs the cancer was allowed to spread further in his body, thus making treatment more dangerous to his life and reducing the chance of success for radiation and chemo-therapy.

> After plaintiff Treakle was denied treatment by Dr. Clemmons he filed a medical complaint with CFG Health Systems Regional Director Sheryl Dubose (defendant #2). Defendant Dubose refused to intervene and render treatment for plaintiff, instead deferring to the wrongful actions of Dr. Clemmons.

> In an attempt to exhaust all administrative remedies plaintiff appealed directly to defendant CFG Health Systems. This defendant refused to provide treatment to plaintiff on the ground that cancer treatment cost was prohibitive and the fact that plaintiff could still possibly succumb to the disease even after treatment.
>
> Plaintiff then contacted Atlantic County Justice Facility Warden Geraldine Cohen and requested that she order medical treatment. Defendant Cohen advised plaintiff that the "matter was out of her hands", and that she was standing by defendant CFG Health Systems' decision to deny medical treatment for plaintiff's cancer.

(Dkt. No. 4, pgs. 3-4).

In his amended complaint, Plaintiff states that he is suing each defendant in their official and individual capacities. Plaintiff also states that he is seeking the following amounts in damages: $100,000 against defendant Dr. Clemmons; $100,000 against defendant Sheryl Dubose; $600,000 against defendant CFG Health Systems; and $800,000 against defendant Geraldine Cohen.

### III. LEGAL STANDARDS

Under the Prisoner Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing

*Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### IV. DISCUSSION

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights by a state official or employee. Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1355-56 (3d Cir. 1994). Moreover, a plaintiff must assert that each defendant had personal involvement in the alleged wrongs, and a defendant's liability may not be predicated solely on the operation of *respondeat superior. Rizzo v. Goode*, 423 U.S. 362 (1976); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The requisite personal involvement may be demonstrated through allegations of personal direction or of actual knowledge and acquiescence. *See Rode*, 845 F.2d at 1207; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995); *Jackson v. Camden Cnty. Corr. Facility*, No. 12–7538, 2013 WL 1844636, at *3 n. 1 (D.N.J. Apr.29, 2013).

At the outset, this Court notes that in § 1983 claims, a plaintiff may only sue individuals in their official capacities for injunctive relief. *See generally, Hafer v. Melo*, 502 U.S. 21 (1991). For monetary damages, a plaintiff can recover only from an individual sued in their personal capacity. *See id.* Here, Plaintiff has sued all of the defendants in both their personal and official capacities. However, since Plaintiff is only suing for monetary damages and is not seeking injunctive relief, his claims against the defendants in their official capacities will be dismissed without prejudice.

A. Denial of Medical Care

Plaintiff states that while he was detained at the Atlantic County Justice Facility he was denied medical care and treatment, and that the defendants demonstrated a deliberate indifference towards his serious medical need. Initially, this Court notes that it is unclear from the face of the Complaint whether Plaintiff was a convicted prisoner or a pre-trial detainee when he was allegedly

5

denied medical care. If Plaintiff was a convicted prisoner, his claim would arise under the Eighth Amendment but, if Plaintiff were a pre-trial detainee, then his claim would arise under the Fourteenth Amendment. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). However, the Supreme Court has previously held that the Fourteenth Amendment affords pre-trial detainees protections that are "at least as great" as those afforded to convicted prisoners under the Eighth Amendment, although the Court stopped short of stating whether the Fourteenth Amendment provided greater protections. *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). In the context of claims for inadequate medical care the Third Circuit has held that, "we have found no reason to apply a different standard than that set forth in *Estelle* (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment." *Id.* Therefore, Plaintiff's claim for denial of medical care will be analyzed using the framework of the Eighth Amendment regardless of whether Plaintiff was actually a convicted prisoner or a pre-trial detainee at the time of the alleged denial of care. *See id.* at 582 (evaluating pre-trial detainee's claim for inadequate medical care under same standard as claims brought under Eighth Amendment).

The Eighth Amendment of the Constitution requires that prison officials "provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Monmouth Cty Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (alteration in original) (quoting *Estelle*, 429 U.S. at 104)). To state an inadequate medical care claim, Plaintiff must allege: (1) a serious medical need; and (2) "acts or omissions"

by prison officials demonstrating that they had a "deliberate indifference" to that need. *Estelle*, 429 U.S. at 106; *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). A medical need is deemed "serious," if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Lanzaro*, 834 F.2d at 347 (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)). A medical need is also deemed "serious," if "unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care." *Id.* at 347 (citing *Estelle*, 429 U.S. at 105).

The second element of an inadequate medical care claim requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. *See Natale*, 318 F.3d at 582. Deliberate indifference is more than mere medical malpractice or negligence. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Rather, deliberate indifference has been likened to conduct that includes "recklessness or a conscious disregard of a serious risk." *Id.*; *see also Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017). More specifically, the Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197 (citing *Durmer v. O'Carroll,* 991 F.2d 64, 88 (3d Cir. 1993)); *see also Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

Here, Plaintiff has alleged that each of the defendants knew about his condition and still refused to provide him with treatment. As to Dr. Clemmons, Plaintiff alleges Dr. Clemmons was aware of his cancer because she specifically asked Plaintiff about it on September 27, 2017. Upon Plaintiff's entering the medical unit of the Atlantic County Justice Facility, Dr. Clemmons

7

apparently asked Plaintiff if he was the "one who has the blood disease?" Upon Plaintiff's confirmation that he was, in fact, that individual, Dr. Clemmons refused Plaintiff treatment and asked him to leave. Moreover, Plaintiff claims Dr. Clemmons was also aware of his serious medical condition because she had received the results of the blood tests conducted by defendant CFG Health Systems which showed that Plaintiff had cancer. Despite knowing that Plaintiff had a serious medical condition, Dr. Clemmons still refused to provide Plaintiff with treatment on September 27, 2017. These facts, taken as true, are sufficient at this stage to state a claim against Dr. Clemmons for deliberate indifference to Plaintiff's medical needs.

As to defendant Dubose, an employee of defendant CFG Health Systems, Plaintiff states that he filed a medical complaint with Ms. Dubose regarding his denial of treatment and requesting treatment. However, Plaintiff states that Ms. Dubose, "refused to intervene" and instead "defer[ed] to the wrongful actions of Dr. Clemmons." Giving all reasonable inferences to Plaintiff, Plaintiff has sufficiently alleged that Ms. Dubose personally knew of Plaintiff's serious medical need, knew that Plaintiff was being denied care by Dr. Clemmons, and Ms. Dubose still intentionally refused to provide treatment. Accordingly, Plaintiff has sufficiently stated a claim against Ms. Dubose for deliberate indifference.

Regarding Warden Cohen, typically, non-medical prison officials "who are not themselves physicians cannot 'be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.'" *Davis v. Norwood*, 614 F. App'x 602, 605 (3d Cir. 2015) (quoting *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)); *see also Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts [. . .], a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). A prison official may be deliberately

indifferent, however, if they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 326. According to the amended Complaint, Plaintiff's informed Warden Cohen that he was being not being treated by the prison doctor for his cancer diagnosis. Although Plaintiff does not state whether he directly informed Warden Cohen or merely wrote to her, Warden Cohen clearly had actual knowledge of the alleged lack of treatment because she responded to Plaintiff's request for treatment and informed Plaintiff that the matter was "out of her hands." Moreover, Warden Cohen stated that she was "standing by defendant CFG Health Systems' decision" to deny Plaintiff medical care. These facts, taken as true, are sufficient at this stage to demonstrate that Warden Cohen knew of Plaintiff's serious medical need and was deliberately indifferent to that need. Plaintiff has, therefore, stated a claim against Warden Cohen for deliberate indifference.

As to defendant CFG Health Systems ("CFG"), Plaintiff appears to allege that CFG is liable on the basis of *respondeat superior* for the deliberate indifference of its employees towards Plaintiff's medical needs. Under § 1983, a private corporation contracted by a prison to provide healthcare for inmates cannot be held liable on the theory of *respondeat superior. See Weigher v. Prison Health Servs*., 402 F. App'x 668, 669-70 (3d Cir. 2010) (noting that a private corporation providing medical service at a state correctional facility cannot be held liable under a theory of *respondeat superior* in a § 1983 suit). Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 690-92 (1978), a private corporation can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). Here, Plaintiff has not alleged such a custom or policy exists with respect to CFG. Rather, Plaintiff appears to allege only that CFG was deliberately indifferent to *his* medical complaints and failed to provide

*him* treatment. Without facts establishing that the alleged deliberate indifference stems from a specific policy, Plaintiff cannot proceed on this claim. Accordingly, claims as to CFG will be dismissed without prejudice.

Therefore, this Court will permit Plaintiff's deliberate indifference claims against Dr. Clemmons, Sheryl Dubose, and Warden Cohen to proceed. Plaintiff's claim against CFG will be dismissed without prejudice for failure to state a claim.

    B.  <u>Appointment of Pro Bono Counsel</u>

Having determined that Plaintiff has sufficiently presented a claim for a violation of his constitutional rights, this Court now turns to Plaintiff's motion for the appointment of pro bono counsel. Plaintiff argues that he should be appointed counsel because he is currently receiving chemotherapy treatment for lymphoma cancer that leaves him exhausted and disoriented. Plaintiff states that he was only able to file the initial complaints and motion with the assistance of a pre-trial detainee who is also a paralegal. However, that individual will be unable to assist Plaintiff in the future due to a scheduled release. Plaintiff asserts that due to the side effects of his treatment, he is unable to litigate this case on his own and requests he be appointed counsel.

Indigent persons raising civil rights claims have no absolute right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). At a minimum, there must be some merit in fact or law to the claims the plaintiff is attempting to assert. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Once that threshold of merit is crossed, a court determining whether to appoint counsel should consider the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and

(6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155-56, 157 n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011) (reiterating the *Tabron* factors).

The first *Tabron* factor examines Plaintiff's ability to present his case. This factor considers "the plaintiff's education, literacy, prior work experience, and prior litigation experience." *Tabron*, 6 F.3d at 156. The plaintiff's ability to present his case is "perhaps the most significant" of the *Tabron* factors. *Montgomery v. Pinchak*, 249 F.3d 492, 501 (3d Cir. 2002). Here, while Plaintiff has, to this point, litigated his claims competently, he maintains that he was only able to put together his Complaint with the help of a pre-trial detainee paralegal. Plaintiff alleges that the cancer treatment he is receiving leaves him exhausted and disoriented, and without assistance he cannot litigate this case. Given the serious nature of Plaintiff's condition, this factor weighs in favor of Plaintiff's request.

The second factor addresses the complexity of the legal issues at hand. Specifically, when the legal issues presented are complex or when the law on an issue is not clear, the court should be more inclined to appoint counsel. *See Tabron*, 6 F.3d at 156. Here, the legal issues presented do not appear unusually complex. Additionally, the Third Circuit has previously held that the legal issue of deliberate indifference to a plaintiff's serious medical need is "relatively simply." *Parham v. Johnson*, 126 F.3d 454, 459 (3d Cir. 1997). Accordingly, since deliberate indifference is the only type of claim asserted by Plaintiff, this factor weighs against his request.

The third factor inquires as to the degree of factual investigation needed and the ability of the plaintiff to conduct that investigation. In *Tabron*, the court noted the potential difficulty prisoners may face in obtaining facts and other discovery from the confines of prison. *Tabron*, 6 F.3d at 156. Moreover, "[a] medical malpractice case involves complex facts and medical records

11

that even most lawyers struggle to comprehend. Hence, most of these cases require expert testimony." *Parham*, 126 F.3d at 460 (alteration in original). Given that this case may involve complex medical facts and the possible need for expert medical testimony, this factor weighs in favor of Plaintiff's request.

The fourth *Tabron* factor addresses credibility determinations. "If it appears that the case will be 'solely a swearing contest' and will rely heavily on credibility determinations, this should weigh in favor of appointing counsel." *Woodham v. Sayre Borough Police Dep't.*, 191 F. App'x 111, 116 (3d Cir. 2006) (quoting *Parham*, 126 F.3d at 460). Here, the case does not appear to be a swearing contest, nor does it appear to rely on credibility determinations. Therefore, this factor weighs against Plaintiff's request.

The fifth factor considers whether expert testimony will be needed. If there is a need for expert testimony in a case, that will weigh heavily in favor of the appointment of counsel. *See Montgomery v. Pinchak*, 294 F.3d 492, 505 (3d Cir. 2002). Here, expert medical testimony will likely be necessary to establish deliberate indifference to Plaintiff's serious medical need. *See e.g.*, *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535-36 (3d Cir. 2017). Accordingly, this factor weighs heavily in favor of Plaintiff's request.

Finally, the sixth factor inquires whether Plaintiff can obtain and afford counsel on his own. This factor is "presumptively fulfilled" when a plaintiff is granted permission to proceed *in forma pauperis*. *See Woodham*, 191 F. App'x at 116. Since here, Plaintiff has been granted permission to proceed *in forma pauperis*, this factor weighs in favor of Plaintiff's request.

Considering all six *Tabron* factors, four factors weigh in favor of granting Plaintiff's request for the appointment of pro bono counsel and two factors weigh against Plaintiff's request. Additionally, the fact that Plaintiff will likely need expert testimony weighs heavily in favor of his

request. Based upon an analysis of the factors, Plaintiff's motion will be granted.

V.     CONCLUSION

For the foregoing reasons, the Complaint is proceeded in part and dismissed in part pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). Plaintiff's claim against each of the defendants in their official capacities will be dismissed without prejudice. Plaintiff's claim against Dr. Clemmons, Sheryl Dubose, and Warden Cohen in their individual capacities will be permitted to proceed. Plaintiff's claim against CFG Health Systems in its individual capacity will be dismissed without prejudice for failure to state a claim. This Court will also direct the Clerk to appoint pro bono counsel to represent Plaintiff in the instant matter. An appropriate order will be entered.


DATE: October 12, 2018                    s/Robert B. Kugler
                                          ROBERT B. KUGLER
                                          United States District Judge